## KELLY-DEMPSEY CO. et al. v. STATE INDUSTRIAL COMMISSION et al.

No. 22022. Opinion Filed April 28, 1931.

Rehearing Denied June 9, 1931.

Sam A. Neely, McMahon & Keating, Rayford S. Reed, and D. F. Rainey, for petitioners.

Fred M. Hammer and M. J. Parmenter, for respondents.

ANDREWS, J. This is an original proceeding to review an award of the State Industrial Commission in favor of the claimant therein, made on the 29th day of November, 1930.

The record shows that the claimant before the State Industrial Commission, hereinafter referred to as respondent, sustained

an accidental personal injury arising out of and in the course of his employment with the Kelly-Dempsey Company, hereinafter referred to as petitioner. The attending physician's first notice was filed on February 21, 1927, and described the nature and extent of the injury as follows, "Hand blown off all but little finger." The employer's first notice was filed on February 23, 1927. The employee's first notice was filed on March 16, 1927, and the nature and extent of the injury was therein described as, "Thumb and three fingers amputated at palm of hand (little finger only finger left)." It shows that he was discharged by the physician as able to return to work "March 7, 1927." It shows a permanent loss of the use of a member.

The physician's report was filed on March 21, 1927, and shows the nature and extent of the injury as "All fingers and thumb blown off except little finger."

A joint petition, with formal parts omitted, as follows:

"1. That this claimant was in the employ of the respondent on February 18, 1927, and that on such date at about the hour of 3:00 p. m. he suffered an accidental injury which has resulted in partial permanent loss of the left hand, such loss being as follows, to wit: The loss of the thumb, first, second and third fingers, his hand being amputated diagonally from a point between the third and fourth fingers to a point below the juncture of thumb with the hand, that the respondent and insurance carrier contend that the claimant was not working within the scope of his employ at the time his accident occurred, but he was attempting to blow a rabbit from a section of pipe; the claimant contending that he was welding said pipe.

"The parties hereto respectfully show that they have agreed to a final lump settlement as provided by section 7325, Compiled Laws of 1921, such settlement to be the payment of the sum of $2,250 by the insurance carrier to the respondent in a lump sum and the payment of all hospital and medical expenses necessary on account of the accident. Parties further show that such settlement is reasonable and just and petition your honorable body to approve the same"

—was executed in the presence of the State Industrial Commission and left with the State Industrial Commission in its files, but it does not bear the filing mark of the State Industrial Commission. It bears the follows: "O. K. by L. B. Kyle." On March 22, 1927, there was filed with the State Industrial Commission an order which, with formal parts omitted, was as follows:

"Now on this the 19th day of March, 1927,

the State Industrial Commission being regularly in session, this cause comes on to be considered pursuant to joint petition of the parties hereto to make final settlement in this cause under the provisions of section 7325, Compiled Oklahoma Statutes 1921, as amended by section 13, chapter 61, Session Laws of Oklahoma, 1923, and the Commission, having considered such petition, and the agreement entered into by and between the parties hereto, by the terms of which the claimant is to receive $2,250 in one lump sum, and being otherwise well and sufficiently advised in the premises, is of the opinion that said agreement is just and reasonable and in conformity with the law and should be approved and that it is to the best interest of all parties that a final award be made in this cause.

"And it appearing: That said aggregate amount of $2,250 has been fully paid;

"It is ordered: That said agreement be and the same is hereby approved and that the payment of the aggregate amount of $2,250 is in full, final, and complete settlement of all claims of the claimant herein for compensation against the respondent or insurance carrier or either of them."

Payment of the sum of $2,250 was made to respondent, who executed a receipt therefor under date of March 16, 1927. On November 21, 1927, there was filed with the State Industrial Commission a motion "to set aside the order entered in this cause on the 19th day of March, 1927, in so far as the said order purports to be a final and complete settlement of the claims of this claimant, and to re-open this case," on four grounds: First, fraudulent inducement to the execution of the joint petition, second, that no testimony was taken at the time said order was entered; third, that the respondent was not advised of his legal rights at the time he signed the joint petition or at the time the order was made; and fourth, that the respondent did not know and was unadvised that he was entitled to $3,600 rather than $2,250.

On the 23rd of November, 1927, the State Industrial Commission made its order filed therein on November 25, 1927, denying the motion of respondent to reopen the cause and overruling the same.

In May, 1930, the respondent filed a second motion to reopen the cause substantially identical with the first one. On August 16, 1930, respondent filed a motion for the cause to be set down for early hearing, and on September 18, 1930, the respondent filed another motion which, with formal parts omitted, was as follows:

"1. That said claimant was induced to sign said purported joint petition for final settlement upon false and fraudulent repre-

sentation made by said respondent and insurance carrier, as more fully appears upon the affidavit of the claimant attached hereto and made a part hereof as fully as is set forth herein.

"2. That there was no testimony taken at the time said purported joint petition was entered into and was supposed to have been approved by this Commission.

"3. That this claimant did not understand the contents of said purported joint petition, was not advised of his legal rights at the time he signed the purported joint petition for final settlement, either at or before the time said order was made by this court approving this said purported settlement.

"4. That claimant did not know nor was he advised either by the court, the representative of the respondent and insurance carrier, or anyone else that he was entitled to 200 weeks for the total loss of a hand and that, therefore, under the law is entitled to the sum of $3,600 in addition to any temporary total disability for the healing period, but to the contrary he was told that he was entitled only to the sum of $2,250 and that was all that the law allowed for the loss of a hand, and in view of the fact he was not advised by anyone at or before said purported joint petition was entered into and approved by the Commission, he signed said purported joint petition and accepted $2,250.

"5. The claimant further states that he, not being advised, relied solely upon what he was told when before the Commission by the representative of the respondent and insurance carrier.

"6. That the order made and entered by the Industrial Commission overruling this claimant's motion to vacate and set aside and hold for naught the purported joint petition settlement is unjust and void in every particular for the reason that said court had no jurisdiction to make such order in view of the fact that if all the allegations set forth in the claimant's motion were true and correct that the said purported joint petition settlement would, as a matter of law, be set aside because he relied upon an alleged fraud, and for the further reason that no hearing was had upon said motion, the claimant was given no opportunity to prove by competent testimony the allegation contained in his motion of November 21, 1927.

"The claimant contends that he is entitled to the total sum of $3,600, the equivalent of 200 weeks, for the total permanent loss of the use of a hand, in addition to his temporary total disability, which he will be able to prove."

On October 30, 1930, the State Industrial Commission made an award setting aside the order of March 19, 1927, approving the joint petition and making the award, and the petitioner brought an action in this court to review that award, the cause being numbered 21955 herein (this day dismissed by the court.) On November 29, 1930, the State Industrial Commission made an award setting aside its award of October 30, 1930, and awarding the respondent 200 weeks' compensation for the total loss of the left hand and 9 weeks' temporary total disability, less the sum of $2,250, which had already been paid. That award was based upon the finding therein set forth, as follows:

"1. That on the 18th day of February, 1927, the claimant, Jack Cox, was in the employment of said respondent, and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law, and that on said date sustained an accidental injury, arising out of and in the course of his employment, consisting of an injury to the left hand.

"2. That the average daily wage of the claimant at the time of said accidental injury was nine dollars a day.

"3. That by reason of said accidental injury the claimant was temporarily totally disabled from the performance of his ordinary manual labor from February 18, 1927, to April 26, 1927, or for a period of nine weeks beyond the five days' waiting period.

"4. That by reason of said accidental injury the claimant sustained a permanent total loss of the use of the left hand by amputation.

"5. That the claimant has heretofore been paid the sum of $2,250 for the loss of said left hand on a purported order on a joint petition of March 19, 1927.

"6. The evidence shows that the claimant's signature to said joint petition agreement was secured by false and fraudulent misrepresentations made by said respondent and its insurance carrier through their counsel of record, H. V. Lewis, to said claimant to the effect that $2,500 was the maximum amount that claimant could receive as compensation for the loss of his left hand, and said respondent promised to secure claimant's signature and consent to said agreement, that he would furnish said claimant with employment continuously after his recovery from said injury. That said claimant relied upon said misrepresentations and promises when he signed said joint agreement, that said claimant was not advised of his legal rights in the premises by the Commission or any member of the Commission, and did not know that under the provisions of the Workmen's Compensation Law he was entitled to $3,600 for the loss of his left hand at the time he signed said joint petition agreement: that by said fraudulent and false misrepresentation his consent and

signature to said agreement was secured by said respondent and its insurance carrier."

The petitioner instituted this proceeding to review that award and here contends:

"That the Commission was without jurisdiction to enter the award appealed from by reason of the fact that a joint petition had been entered into by the parties thereto and herein; that the same was duly approved by said Commission, and was a final settlement of all issues in said cause."

The applicable statute is section 7325, C. O. S. 1921, as amended by section 13, chapter 61, Session Laws of 1923. That statute has been construed by this court in Willett v. State Industrial Commission et al., 129 Okla. 101, 263 Pac. 664, in which this court held:

"The Industrial Commission of the state of Oklahoma is without jurisdiction to set aside an award made upon a joint petition of employer and employee under the provisions of section 7325, C. O. S. 1921, as amended by the 1923 Session Laws (ch. 61, s. 13), or to make any further award where it appears that a hearing as provided in said section was had on said petition, and a final award made and no appeal taken therefrom."

The respondent contends that the award was obtained by fraud in the inducement to the execution of the joint petition by him, and that for that reason it may be vacated upon proof of the fraud. It was so held in Tibbs-Dorsey Manufacturing Co. et al. v. State Industrial Commission et al., 147 Okla. 232, 296 Pac. 490. It is not necessary, however, for us to determine that question or to apply the rule announced in the last-cited case, for the reason that there was no proof of any such fraud as would justify the vacating of an award, if an award based upon a joint petition may be vacated for fraud.

The petitioner further contends:

"That the question presented to the Commission by the respondent Jack Cox's motion to reopen said cause, which was sustained, and upon which the order of the 30th day of October, 1930, was entered, was res judicata, inasmuch as a similar motion setting up the same grounds for reopening said cause had theretofore been overruled by order of said Commission and no appeal taken from said court, thus leaving said former order as a final order in said cause, and divesting the Commission of any further jurisdiction of the parties or subject-matter involved in said motion, so overruled as aforesaid."

We do not think it necessary to consider that contention, for the reason stated in our discussion of the first contention.

The third contention of the petitioner is as follows:

"That the evidence and the record in said cause wholly fails to sustain the finding of the respondent, State Industrial Commission of the state of Oklahoma, that the signature of respondent, Jack Cox, to the joint petition entered into by the parties to this action, approved by said Commission, was obtained by fraud."

Under that contention we have the question of whether there was any evidence reasonably tending to support the finding and award of the State Industrial Commission. We think there was none and that the State Industrial Commission was in error. There is nothing in this record to show that anyone ever told the respondent directly or by inference that $2,500 was the maximum amount that he could receive as compensation for the loss of his left hand. In the first place, the petitioner, prior to and at the time of the execution of the joint petition, contended, and the record supports the contention, that the respondent had not lost his left hand. The joint petition so shows. He had lost a part of the hand, but still had the little finger. A few weeks after the joint petition and award of March 19, 1927, the little finger was amputated. At the time of the joint petition the respondent had not lost his left hand and there is nothing in this record to show that either he or the petitioner thought that he would lose the little finger. The respondent testified:

"Q. Did you understand that to be a full and final settlement as to your rights under the Workmen's Compensation Law? A. Yes. I did. Q. How come you to sign it? A. Well, they offered me employment and I did not find out my rights about it until later, and so that is when I started to come back. Q. Now, describe in detail as to the condition of your hand as to whether or not there was any part of your hand still remaining on. A. At first they amputated it in these three fingers, these three first fingers were amputated, and this thumb clear back to the wrist. They left this one finger. Q. Are you referring to the little finger? A. Yes, they left that on. So then I settled for it, and so I settled for it, and it kept bothering me at night. I would go to sleep and it would jerk."

No one ever discussed with him the law as to the amount of compensation allowable for the loss of a hand. He was asked and answered:

"Q. Do you know what the law allowed for the loss of the hand? A. No, sir. Q. What was your impression as to whether or not that $2,250 was the amount provided by

270

law for the loss of a hand? A. Well, I was in the hospital all the time and never had a chance to consult an attorney about it, and I was dumb, and did not know much about it, and I was very much in need and they offered me the job, and I was very nervous about it, and I thought if I would go to work I would be all right. When a job was furnished me, I thought I would be all right."

The finding is directly in conflict with the evidence of the respondent, who testified:

"Q. Now, at the time they offered you $2.250, did they offer you a steady job? A. Not steady. They offered me employment, but no definite time was set. They did not tell me they would employ me for two or four years."

It will be noted that there is nothing in the joint petition with reference to employment.

There is nothing in this record to show an intent not to perform the agreement to furnish employment. The respondent testified that he went to Bartlesville after the award to see Bob Strong, who had him in mind for employment, and that he was employed by Mr. Strong for the Empire Pipe Line Company and worked for about four months, and that a short while after he quit working for the Empire he employed Mr. Shaw to represent him in an attempt to reopen the case. We are not here concerned with whether or not he may recover at law for the breach of agreement, if any, to furnish him employment.

The fact that neither the State Industrial Commission nor any member thereof advised the respondent of his rights cannot prejudice the rights of the petitioner.

The respondent contends that provisions of the statute with reference to a joint petition and the award thereon were not followed and attempts to read into the statute a provision making its authorized procedure mandatory. He says that his joint petition was never filed. The record shows that it was presented to the Industrial Commission and left with it and produced at the time of the trial from its files. He says that no hearing was had thereon, but the evidence shows that a hearing was had thereon and that respondent appeared before the Commission and, after discussing the matter with Commissioner Kyle, signed the joint petition in his presence.

As we view the situation disclosed by this record, the respondent suffered an injury to his hand which resulted in the loss of the thumb and the first three fingers. He was desirous of procuring a cash settlement and he agreed to accept $2,250 in full settlement thereof. The agreement was reduced to writing and submitted to the State Industrial Commission and approved by that Commission. Thereafter it appeared that there was a greater injury to the hand than he had thought and that it was necessary to amputate the little finger, which resulted in a total loss of the hand and which materially increased the amount of compensation that could have been awarded him. That, however, was a change of condition which may not be corrected after an award made on a joint petition and may not be considered by this court in determining the issue presented here. There is nothing in this record to show any fraud in the inducement leading to the execution of the joint petition by the respondent.

The respondent was injured on February 18, 1927. On March 16, 1927, he entered into the joint petition for an award, and the same was presented to the State Industrial Commission for approval. The respondent appeared before the State Industrial Commission and discussed the matter with the chairman. At that time he had lost three fingers and thumb from his left hand by amputation, the little finger not having been amputated. The question of the amount of the award to be made was an open one to be determined from the evidence, and the joint petition was such a settlement as was authorized to be approved by the State Industrial Commission. It was so approved. The petitioner paid the respondent the amount of the award made by the State Industrial Commission on the joint petition. On November 21, 1927, the respondent filed a motion to vacate the award, and that motion was overruled by the State Industrial Commission on November 23, 1927. Nothing further was done until the respondent procured another lawyer and filed a second motion to vacate the award three years and two months after the date of the award made on the joint petition and two years and six months after the motion to vacate the award and reopen the case had been overruled. During all that time he had full knowledge of all the facts. There is no evidence in this record that justifies the vacating of the award of March 19, 1927, and the award of November 29, 1930, is disapproved, vacated, set aside and held for naught.

LESTER, C. J., and HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., and RILEY, J., absent.